UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOs:  7:20-MJ-01610-5 |
| | ) | (4:20-CR-00212) |
| Plaintiff, | ) | (Eastern District of TX) |
| | ) | |
| vs. | ) | CRIMINAL |
| | ) | |
| CARLOS ROCHA VILLAURRUTIA, | ) | McAllen, Texas |
| | ) | Friday, August 28, 2020 |
| Defendant. | ) | (3:02 p.m. to 3:54 p.m.) |

CONTINUED DETENTION HEARING

BEFORE THE HONORABLE JUAN F. ALANIS,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**

For Plaintiff:          MICHAEL MITCHELL, ESQ.
                        Assistant United States Attorney
                        1701 W. Business Hwy. 83
                        Suite 600
                        McAllen, TX 78501

For Defendant:          CARLOS A. GARCIA, ESQ.
                        1305 E. Griffin Pkwy.
                        Mission, TX 78572

Court Recorder [ECRO]:  Karen Lopez

U.S. Probation:         Lorraine Gonzalez

Transcribed By:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, Texas 78468
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**McAllen, Texas; Friday, August 28, 2020; 3:02 p.m.**

**(Appearances via Zoom Web Video Conferencing)**

**(Call to Order)**

**THE COURT:** Good afternoon. You may be seated. Let me formally call on the record *United States of America versus Carlos Rocha Villaurrutia*, Docket Number 7:20-MJ-1610-5. I'll note for the record he is already in the courtroom at the jail facility. Announcements, Government first.

**MR. MITCHELL:** Michael Mitchell for the United States, your Honor, present and ready to proceed.

**MR. GARCIA:** Good afternoon, your Honor. Carlos Garcia on behalf of Mr. Villaurrutia, we're present and ready to proceed.

**THE COURT:** And, Mr. Garcia, let me take care of preliminary matter. Any objection to your client being here through use of the videoconference system?

**MR. GARCIA:** No, your Honor, we have no objection.

**THE COURT:** Mr. Villaurrutia, let me go ahead and take care of that matter at this time. I do need to ask you some questions under oath under penalty of perjury should you provide a lie or false statement to the Court. Therefore, at this time please raise your right hand so I could place you under oath.

**(Defendant sworn)**

**THE COURT:** You may place your hand down. Sir, is

**EXCEPTIONAL REPORTING SERVICES, INC**

3

your true and correct name Carlos Rocha Villaurrutia?

**THE DEFENDANT:**  That is correct.

**THE COURT:**  And right now, sir, are you here under the influence of any drugs, alcohol, or medication?

**THE DEFENDANT:**  No, sir.

**THE COURT:**  Similar to the last hearings, obviously the setup is the same.  I'm at the courthouse with the -- in the courtroom is the Federal prosecutor, the Clerk of the Court, the court reporter.  Your attorney, Mr. Garcia, is online, as well as Probation Officer Ms. Gonzalez.  And the system is set up in light of the COVID-19 pandemic.  Let me ask you at this time, do you consent to these proceedings and being here through use of the videoconference system?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  I do note you did answer in the affirmative in regards to the consent.  And these are -- these proceedings are allowed pursuant to General Order Number 2020-10 in light of the COVID-19 pandemic.

This hearing was set, there was filings from defense counsel, Mr. Garcia, in regards to whether or not bond should be set in this matter.  I had indicated that presumably if there were additional filings, there would be a hearing so all parties could properly respond to these additional filings. Before I get to that, I guess I have some specific questions I want to address first.

**EXCEPTIONAL REPORTING SERVICES, INC**

4

Let me address Mr. Mitchell on that regard.  In regards to I guess the ninth filing from Mr. Garcia, there's a statement in there about the DEA agent advising the Defendant, Mr. Rutia (sic), basically a month before his arrest I guess let me look at what is set here forth.

MR. MITCHELL:  That he was going to be arrested, your Honor.

THE COURT:  Right, that basically we're -- I guess we're no longer -- that whatever agreement they may have had, that's no longer in existence and you're going to be arrested in about a month.

MR. MITCHELL:  Correct, your Honor.  As said, the Government would object to that.  I understand that Mr. Villaurrutia at one point was signed up.  He is -- was no longer signed up by DEA at some other point.  But as to what the DEA specifically told him, whether he was going to be arrested or not arrested, we would object to that.

THE COURT:  And you don't have any additional information.

MR. MITCHELL:  I don't believe so, --

THE COURT:  In regard to --

MR. MITCHELL:  -- your Honor, no.

THE COURT:  -- whatever conversation may have occurred between the agent -- the DEA agent, I believe Perteski (sic), and Mr. Villaurrutia.

5

**MR. MITCHELL:** Correct, your Honor. I have no other information for that. And my HSI agent, Special Agent Jesse Villarreal, is here as well and he does not have any information as to any conversation that would have occurred between the DEA agent and the Defendant in this case.

**THE COURT:** And, Mr. Garcia, I'll let you address that issue in a moment. Let me just clarify a couple other points. And I guess well let me address you on this, Mr. Garcia. In the I believe at Document 8, at the end there's an insurance card for a Tesla X, but in the Pretrial Report, it shows that the only vehicle your client allegedly owns is a recent purchase of a high-end vehicle this past year. I'm just trying to get a clearer picture of all his assets determine if bond --

**MR. GARCIA:** Yes, your Honor, --

**THE COURT:** -- should be set.

**MR. GARCIA:** Yes, your Honor, if I may. The Tesla was a vehicle that he would drive periodically that the vehicle was under his mother's name. But both he and his wife I believe at one time carried insurance. The only reason that that document was filed, Judge, and I know it's an outdated or expired insurance card, was in order to show their place of residence, Judge. I know it raises the other issue of we got a call from Ms. Gonzalez about that same issue and the issue is, is that the vehicle was under his mom's name but he did drive

**EXCEPTIONAL REPORTING SERVICES, INC**

6

it and so would his wife at times.  But the vehicle is under his mother's name.

THE COURT:  No, I appreciate you clarifying that. And one of the concerns that I had, and not necessarily with regards to your client, but there is concern that sometimes individuals may decide to for whatever reason they're not as forthcoming necessarily in regards to their assets.  And there may be a variety of reasons.  There may be concern for the privacy, maybe other reasons.  Just want to kind of clarify what the issue was there.  I will say in review of the Pretrial Report, Mr. Villaurrutia appears to be very open in regards to his finances in comparison to other individuals and that is only in consideration determining whether or not a bail or bond could be set and for no other reason --

MR. GARCIA:  Yes, Judge.

THE COURT:  -- in that regard.  Two other issues.  I know there's testimony from the agent I believe your client possesses a Mexican passport.  Do you happen to know where that is at at this time?

MR. GARCIA:  It's here in my possession, your Honor. I have both the Mexican and the U. S. passports are both in my possession.  Both of those documents were in his house.  They searched the house but they were left behind and I have them here in my office.  And I also notified Pretrial Services that I had those in my possession.  Subject to the Court's

7

consideration for a bond, we would obviously tender those.

THE COURT:  And then while we're addressing that last filing, what is the issue with that frozen bank account; are all the bank accounts which -- frozen at this time?  And they may be.  I mean, that's the prerogative the Government have if they have the evidence to --

MR. GARCIA:  Yeah, Judge, I don't --

THE COURT:  -- freeze accounts.

MR. GARCIA:  Who was that addressed to, Judge?

THE COURT:  That was addressed to you, Mr. Garcia.  Pardon me.

MR. GARCIA:  Yes, your Honor.  Only that there was an account that was under my client's name that his wife tried to go use the debit card and was not allowed to.  They then called the bank and the bank alerted them that the account had been frozen.

THE COURT:  Well, and as you know, that's something the Government could do and appears they have done in this case in regards to your client.

MR. GARCIA:  Yes, Judge.  But the reason that I included that in the filing, Judge, is that, I mean, it shows that -- and the statement in the ninth filing from the Defendant, Judge, it further illustrates the lengths that the Government will go to in order to put Mr. Villaurrutia in a position to -- that would actually hinder his ability to be

8

able to do what they allege.  The Government at the last hearing, based on the testimony from Mr. Villarreal, stated that my client had, you know, they alleged -- I don't know if they alleged but they intimate that my client has access to 20 airplanes or some vast or $20 million and some vast amount of income.  And so, you know, the Government is exercising its ability to forfeit or to seize or to freeze my client's assets.  They also -- and so that's why I raised the -- that issue, Judge.  And as stated in the motion for bond that, you know, at the time that the handler told him that he was cut off -- and just by way of background, Judge, there have been times when the handler would reach out to my client and let him know, hey, you know, these agents are, you know, they want to know what's going on with this or they want to know what's going on with the other.  And my client would speak to his -- to Ryan Petreski (sic) from Miami and explain to him certain situations.  And sometimes they'd get clarified and sometimes they wouldn't.  But there was always the threat that, hey, these guys want you, these guys want you, you know, these agents in Texas want you.  And so my client was always under the understanding or impression that, you know, keep cooperating or these agents are going to arrest you.  And so he tried to keep and stay in the Government's good graces.  When I say "the Government," I mean his handler with the agreement that he had signed off on.  When his handler came and told him,

hey, you know, you're cut off, you're done, the -- you know, he told him, he advised him, that he was going to be arrested that, you know, he was no longer protected for those agents that were looking for him, agents that were asking questions. And so that's the reason that that's included in the proffer, Judge.  I don't believe -- obviously we don't have my client's handler to come and testify before your Honor.  I think that his testimony may have been of some value to the Court for the Court's consideration.  But, you know, the Government brings who the Government brings.  And so I think just based on the testimony, that's why I included it within the motion here as it relates to the -- again, going back, my client was in a much better position to flee at the time that he was cut off if he wanted to.  The fact is he stayed here, he continued to live here, continued to be with his children, continued to be with his wife and his family, and continued to reside here.  This is where -- this is the only place he's ever known to be his home. And so I'd respectfully ask the Court to consider the filing and the additional letters of recommendation that were filed on his behalf.

**MR. MITCHELL:**  And, your Honor, the Government for the record is going to object to that attorney proffer as well.

**THE COURT:**  Will note the objection to the proffer. And, Mr. Garcia, before I let the Government respond, any further argument at this time on behalf of your client?

10

**MR. GARCIA:** Judge, I mean, other than an objection, does the Government have a rebuttal?  Do they have evidence?  Other than just saying they object to it, do they have something of substance to add to the argument that I'm making?  That's all that I'm asking for, Judge.

I would ask the Court on the offer of proof that was submitted, my client's pilot's license, you know, the Government's agent testified about this hundred and forty hours described by Agent Villarreal of hours that my client had as a student pilot.

It was soon after that that he was diagnosed with Hodgkin's lymphoma to which he -- we attached -- that was an attachment as well for the Court's consideration where he received treatment here at the Texas Oncology South Texas Cancer Center.  He is a survivor of cancer.  He had cancer in his lymph nodes.  He is someone who, you know, is every day that he spends in La Villa, Judge, is another day that he is at risk of contracting the COVID-19.  You know, people with compromised immune systems, people who are survivors of cancer, I mean even -- I did some brief research, Judge, from the American Cancer Society, what happens to a person's body once they receive the chemotherapy that my client has endured, it is a debilitating illness for the balance of his life.  And the fact that he's held in a place, in a facility that has had inmates who have tested positive, luckily he's still in

11

isolation.  But I respectfully ask the Court to consider that as well and the time that he's going to spend in the custody of the U. S. Marshals while being transported to the Sherman Division, Judge.  And so that no -- nothing further on the behalf of Defendant.

THE COURT:  Mr. Mitchell.

MR. MITCHELL:  Your Honor, I would like to raise one issue with the Court regarding what Mr. Garcia said in terms of home address.  It comes to the Government's attention, and I could proffer this, although I expect Mr. Garcia will object, and I have my agent available to testify again if the Court would so choose, but it's come to the Government's attention that on some financial filings that the Defendant has made in Mexico as it relates to an aviation business, I believe in wire transfers as well as a possible loan application, the Defendant actually has been listing a Mexican address as his place of residence for purposes of these financial disclosures.  So, your Honor, I don't think it's entirely clear that the Defendant totally just resides in the United States.  He's at least in the past made representations that he actually resides in Mexico.  So that is of concern to the Government.  The Government would proffer that and is ready to call its agent if necessary.

THE COURT:  Mr. Garcia, any objection to that proffer at this time?

12

**MR. GARCIA:** No, your Honor. I don't have any evidence to the same, Judge, so we have no position, I have no objection.

**THE COURT:** Mr. Mitchell, you may proceed then.

**MR. MITCHELL:** Yes, your Honor. The Government's position in this is still that the Defendant is not an adequate candidate for bond in this case. He poses a significant flight risk and is per se a danger to the community. I think one of the things the Government is stressing in this issue is the sheer amount of cocaine that was being moved and intended to be imported in the United States by the Defendant. We're talking about multi-kilo ton loads of cocaine. And that right there, that's just per se danger to the community, your Honor. Congress has set out in these cases that there is a presumption against bond. And I know your Honor has overcome that presumption but I think -- I highlight this to stress that these are serious type of cases. Congress in the Bail Reform Act actually set out circumstances that ensures people get bail. In this case they said, wait a minute, the presumption is actually the Defendant shouldn't get bail or bond. And again I know your Honor has ruled on that but I just again am highlighting that to show that the Defendant is per se a danger to the community.

The other issue is flight risk, your Honor. In this case, the Defendant is a significant flight risk. I understand

**EXCEPTIONAL REPORTING SERVICES, INC**

13

that Mr. Garcia is raising the issue that some finances have been frozen. However, we are finding out the Defendant has business dealings in Mexico, he has three businesses that we know of in Mexico where he's either an outright owner or partial owner, he has access to planes, he has access to pilots training. And I understand that this pilot's training may have occurred years ago but it's still 140 hours in the air, your Honor, that the Defendant has. He has a passport from Mexico, he has a United States passport. Even if those are turned over, it still shows the Defendant at some point has maintained close ties to Mexico. It's the Government's position that the Defendant could easily reestablish himself if he so chose to do so in Mexico.

The other issue that Mr. Garcia has brought up is that at some point this Defendant no longer was signed up with DEA and for whatever reason he hadn't left the country. And, your Honor, the Defendant is in a very different circumstance than he was a month ago. Whatever conversation may have taken place at that point, I don't know what he was told. He's in a different circumstance. Things change when the defendant is actually in custody, the defendant is actually sitting in jail, the defendant is actually meeting with his defense attorney and discussing what the guideline sentence is for 2,000 kilos of cocaine, your Honor. He's not in the same circumstance. He poses a significant flight risk. He has the ability and the

14

means to reestablish himself in Mexico and place him potentially out of the reach of the United States government. So for that reason, your Honor, the Government is requesting that no bond be issued in this case.

THE COURT:  Mr. Mitchell, let me ask you this, though.  I understand you're disputing the proffer about what the agent may or may have -- the agent out of Miami may or may not have said to him, --

MR. MITCHELL:  Correct, your Honor.

THE COURT:  -- but there is no dispute obviously in January he was approached or some -- in January basically a relationship was developed between him and the officer as a source or potential source I guess.

MR. MITCHELL:  To my knowledge, at some point in January of 2020 he was signed up with DEA.  Your Honor, I don't know when that relationship ended for sure.  But at some point he was and I believe it was January of 2020.

THE COURT:  So at some point an agent would have approached him, or I'm not sure how it came about, maybe he approached the agent, that happens sometimes as well, but either way, he was advised we believe you're connected to all this, maybe you could help yourself out and maybe you can, presumably signed up hopefully that for his benefit and the Government's benefit if everything had worked out.

MR. MITCHELL:  Presumably, yes, your Honor.

15

THE COURT:  All right.

MR. MITCHELL:  I believe that's probably what happened.

THE COURT:  Mr. Garcia, any further argument?

MR. GARCIA:  Yes, your Honor.  I just want to I guess go on the record, Judge, and just let the Court know that we would not have objected and to have the DEA agent testify today.  You know, that agent is under the Government's control.  I guarantee the Court that if he had something negative to say about my client, you know, Mr. Mitchell and/or the U. S. Attorney's Office would have had him come and testify or made arrangements to have him testify via videoconference and/or by telephonically.

I respectfully ask the Court to, you know, consider the -- again, my client's place in the overall scheme that the Government is alleging.  You know, my client is nothing, you know, if the Court were to put great weight in what the Government keeps referring to as far as his involvement or his work with aeroplanes (phonetic), you know, every salesman that sells tractor-trailers would end up in the same position or could arguably end up in the same position as Mr. Villaurrutia.  You know, every car salesman that sells a vehicle and ends up, you know, selling it to someone that ends up using it for criminal means could end up in the same position that Mr. Villaurrutia is in.  I understand that an airplane presents

**EXCEPTIONAL REPORTING SERVICES, INC**

16

a significant problem for the Government and for its investigators.  But, again, I would position my client as someone who never handled narcotics, never made arrangements for narcotics to be put on planes, never coordinated with anyone.  I think the Government would have proffered that information, they haven't, that he was involved in the actual transport of the narcotics.  Again, according to the Government's own terms, he facilitated the purchase of airplanes that were going to be used by narcotraffickers.  He himself is not a narcotrafficker.  At best or at worst, depending on your perspective, the Defendant is someone who aided and abetted those who decided to commit those criminal acts.  And so I respectfully ask the Court to find that there are conditions or a combination of conditions to assure Mr. Villarreal's (sic) appearance in every court proceeding.  I ask the Court to make specific findings as the Government has alerted counsel for the Defendant that if the Court were to find that bond is appropriate, that they plan to file for a stay of his release and the Court's order.  So I respectfully ask the Court if the Court is inclined to find that he qualifies for bond, that the Court make very specific findings of fact as to why that is, Judge.  I have nothing further.

**THE COURT:**  Mr. Villaurrutia, initially stated to you the other day I was going to take everything under advisement.  Based on the additional filings from your counsel, I believed

17

it was warranted to continue this hearing to allow the

Government to respond to your -- as well as to let your counsel

expand on any additional arguments he wished to set forth at

this time.  So I'm going to go ahead and set forth everything

here on the record in regard to this matter.  Please listen

carefully, sir.  Please note if I make a misstatement about

your background or your personal circumstance, try to get my

attention and, Mr. Garcia, correct that here on the record.

So just so it's clear under the Bail Reform Act,

there are various factors and circumstances I as a court am

required to take consideration determine whether or not bail or

bond can be set.  One is the offense charged and the facts and

circumstances of the case.  You're charged by indictment out of

the Eastern District of Texas, Sherman Division, in four

counts:  conspiracy to possess with the intent to distribute

five kilograms or more of cocaine from 2012 to the date of the

indictment here in 2020; conspiracy to manufacture and

distribute five kilograms or more of cocaine and reasonable

cause to believe that such substance would be unlawfully

imported into the United States from 2012 to the date of the

indictment.  In violation of Title 21, United States Code, 963.

The aiding and abetting and the manufacture and distribution of

five kilograms or more of cocaine and reasonable cause to

believe that such cocaine would be unlawfully imported in the

United States from 2012 to date of the indictment.  That's in

18

violation of Title 21, United States Code (indisc.) and conspiracy to commit money laundering of the proceeds connected with such specified unlawful activity, in this case the drug trafficking activity.  In violation of Title 18, United States Code, 1956(h).  Just so it's clear, the first three allegations have a statutory punishment range of ten years to life.  Therefore, under the Bail Reform Act there is a rebuttable presumption of detention pursuant to Title 18, Untied States Code, 3142(e)(3)(A).  Based on the testimony of Agent Real (sic) from the hearing the other day with the Department of Homeland Security, Homeland Security Investigations, it appears your role as alleged at this time was the acquisition and registration of airplanes used to transport cocaine with the intended distribution here in the United States.  Your involvement dates from 2017 based on his testimony until about 2019.  And it is alleged and the Government believes you worked with your uncle who appears to be a codefendant in this matter in regard to said -- in regard to the transactions of the acquisition of the airplanes.  There is testimony present that based on the airplanes you provided, you're connected to at least eight events involving a significant amount of cocaine of 2,000 kilograms.  Some of those eight events involved the seizure of cocaine after airplanes had crashed in foreign countries prior to the attempted importation in the United States.  The Government operating theory is the cocaine was --

19

the cocaine, pardon me, would eventually be smuggled into the United States for further distribution.  Please note you are presumed innocent of these allegations but it can be considered to determine whether or not bail or bond can be set in this matter.

Further note, there is some testimony presented and there's no dispute on this point, even though there may be a dispute on the actual conversations, but in January of 2020, somewhere or how you became a source or agreed to cooperate with a DEA agent out of Miami, Florida in regard to the investigation.  That was January of 2020.

In regards to your current arrest here, you were found in McAllen, Texas.  A subsequent search warrant was executed at your residence after your arrest.  Also per the testimony of Agent Villarreal, you have traveled out of the country in connection with the alleged transactions but it does not appear, based on the first testimony, that you own a residence or properties in a foreign country.  Testimony has been presented here this afternoon under proffer from Mr. Mitchell that apparently in going through the paperwork in regard to various transactions -- and just so it's clear, Mr. Mitchell, are these transactions connected to the purchase and the sale of the airplanes?

MR. MITCHELL:  I believe so, your Honor, yes.

THE COURT:  But based on the transactions, there

EXCEPTIONAL REPORTING SERVICES, INC

20

appear to be -- and, Mr. Mitchell, correct me if I'm wrong on the proffer, but that you put down -- Mr. Villaurrutia, that you put down on paperwork that you actually have a residence in Mexico in connection with either the sale or acquisition of the airplanes; is that correct?

**MR. MITCHELL:** That's correct, your Honor.

**THE COURT:** So I will note that there is some evidence that you actually may own property in Mexico that you claim that was not present at the first hearing. I'll take that into consideration.

I will note that Agent Villarreal did testify at the first hearing that since January of 2020, you've been advised of this investigation somehow through DEA in some form or fashion. But no information was provided to Agent Villarreal from DEA or any other agents of any attempts by you to either flee the country or make plans to flee the country to avoid any arrest in this matter since January of 2020.

Testimony was presented that you do own several airplanes, some of which may have already been seized by law enforcement.

Also note that testimony was presented that you own one company in Mexico and you're partners with two other companies, and each of these companies operate out of -- all these companies operate out of Mexico. And you do have a Mexican passport. As articulated by Mr. Mitchell here this

21

afternoon, the argument is that if you are set out on a bond, it would not be difficult for you to flee to Mexico and make a life for yourself in Mexico.

In addition, testimony was presented that your uncle is presumed to be in Mexico, the one who appears to be a codefendant in this matter.  And I will note based on review of the Pretrial Report I believe your father also resides in Mexico.  So that is a concern for the Court as well that you do have family in Mexico at this time.

Testimony was presented that you did go to flight school back in 2005 but you did not actually obtain a pilot license at that time.  Your attorney has presented evidence that shortly afterwards you basically came down with cancer. Fortunately you were able to beat cancer and get through the cancer treatment and get through that crisis.  There's an implication that because of that cancer treatment that ended any further flying on your part or trying to get a license at that time.

I will note Agent Villarreal testified in regards to the uncle that he has been convicted for fraud and has been deported and is believed to be in Mexico.

If I understand the testimony presented, there are several bank accounts that have been connected to your businesses out of Mexico.  The Government submits that those accounts have been linked to transaction totaling over $20

**EXCEPTIONAL REPORTING SERVICES, INC**

22

million.  If I understand the argument from the Government, I don't believe there may be $20 million in those accounts at this time, but in connection with the ongoing acquisition of these airplanes, $20 million have been -- up to $20 million were transferred out throughout these accounts.  I will note (indisc.) Government's probably -- didn't articulate this but my guess is that's probably going to be in connection with the money laundering count, too.  It appears the allegation is that you may have not only been acquiring the airplanes but considering the money involved, there may have been some laundering of drug proceeds as well in connection with those transactions.

In regards to personal circumstances and background, I too take judicial notice of the Pretrial Report.  I do know you are 39 years old, you are a naturalized United States citizen.  You did spend the first ten years of your life in Mexico but you spent the last 37 years here in -- I'm sorry, that math will not add up right.  Based on the Pretrial Report, I believe two years of your life in Mexico, I misspoke, not 11 years; next 37 years here in McAllen.  You are married.  I believe your wife and your four children are United States citizens as well.  Your mother also resides here in McAllen.  As noted, your father resides in Mexico.  You also do own a United States passport.  Does note you also have one sibling who resides here in Edinburg, Texas.  You do have two adopted

23

brothers, one who resides in the U. S. and -- let me just note, one of your brothers appear to be disabled and resides with your mother at this time.  I'm not sure where the other brother resides at in regards to your two adopted brothers.  And does note here your wife is a United States citizen as well.  Note, too, you also graduated from high school, Memorial High School, and that you're employed with aviation sales in two different companies.  Mr. Mitchell, if I understand it, one of the companies is his own company; is that correct?

**MR. MITCHELL:**  That's correct, your Honor.

**THE COURT:**  And is that company connected to a Mexican company or does --

**MR. MITCHELL:**  No, your Honor, I don't believe it's connected to the Mexican company.

**THE COURT:**  In regards to your assets and liabilities, it does note that recently you did purchase a 2020 BMW vehicle.  There was clarification regards to the insurance card on the Tesla X.  Does note your information regards to your personal checking account.  And there is an estimated cashflow you provided to the Pretrial officer of anywhere from 8,000 to $50,000 in regards to income on a monthly basis.  You do have a residence that you rent here in McAllen with your family.  Do note that based on Pretrial Report, it appears your income is supplemented by your wife's business as well as your mom's daycare business.

24

Through your counsel, various letters have been submitted as set forth in Document 8 and Document 9.  I believe, Mr. Garcia, that they're the same reference letters in each; is that correct?

**MR. GARCIA:**  No, your Honor, they're different.  The second batch are different letters, Judge.  There -- those are additional ones.  The ones in Document 9 are additional letters.

**(Pause)**

**THE COURT:**  Mr. Garcia, just to be clear, I know sometimes mistakes are made in ECF filing, but like I know the first letter in each is from the principal at OLS and it really looks like that they're the same set of letters presented in each case, Mr. Garcia.  Just so it's clear for the record.

**MR. GARCIA:**  That may have been a misfiling on my part, Judge, because I do have two sets of letters that were named differently.  Maybe I attached the wrong one, Judge, because I PDF them and then I attach them.  I can refile, Judge, but the second one were the ones that have the second -- on Document Number 9 were the additional letters of support and so the Document 8 would have the ones that I had before.  We didn't have that one from OLS on Document Number 8.

**THE COURT:**  Actually you did.

**MR. GARCIA:**  No, I'm saying what -- we weren't supposed to have it.  The filing was something different,

**EXCEPTIONAL REPORTING SERVICES, INC**

25

Judge.  That's what I'm saying.  It must have been a misfiling on my part, Judge.

THE COURT:  Well just so it's clear, and I'm going through them again just so it's clear here for the record, it is -- so Document 8-3 under seal and Document 9-2 under seal are the same reference letters.  I will note --

MR. GARCIA:  (Indisc.)

THE COURT:  -- I could summarize them.

MR. GARCIA:  (Indisc.)

THE COURT:  I mean, --

MR. GARCIA:  (Indisc.)

THE COURT:  -- a majority of the letters --

MR. GARCIA:  Your Honor --

THE COURT:  -- basically set forth he's a good father, you know, he tends, you know, attends to his kids, takes care of his kids real well, you know, generally speaking, you know, friends and family members speaking on his behalf.  I do note there's additional letters you claim you tried to file. I don't know if they would add anything else beyond --

MR. GARCIA:  (Indisc.)

THE COURT:  -- he seems to have a good reputation among his friends and family about being a good father.

MR. GARCIA:  Well, Judge, if I may interrupt, I do have the filings in front of me.  And the filings on Document Number 8 would have had this as a cover page.  I'm showing it

26

here on the screen.  That's what was that was filed on Document Number 8.  If that is not shown on the Court's Document Number 8, then there has to -- there's some miscommunication or something because the filings on Document Number 9 have this cover page on it.  And they're completely different letters. These are the ones that were Document Number 9, and this is Document Number 8.

THE COURT:  Right.  So then the error must have been -- and I understand that mistakes are made, it's with Document Number 8 because 8-3 and let me get it put on the screen are -- well, it's basically the same letters in support and recommendation as in Document Number 9.  So that first batch you meant to attach with Document Number 8 were not attached.

MR. GARCIA:  Well, Judge, I don't know what the -- I did not have these letters on Document 9 when I filed Document 8.  I didn't have them in my possession until the day I filed them and so I don't know how that mix-up could have occurred because Document 8 had these and these are the only letters I had at that time.  When I filed Document 9, I did not have the letters in Document 9 until the day I filed them.  So in any event, Judge, they -- you are correct in stating that they do contain letters of support talking about his reputation in the community, talking about his reputation in the -- at his church where he is alumni from OLS, other church members, other people who have known since he's a child, who have known him always to

27

be exactly as the Court was intimating.  I'll let the Court continue.

THE COURT:  No, that's fine.  I was going to ask you to ask Mr. Mitchell, I don't know if you had a chance to look at those exhibits then.  Just what I have, 8-3 and 9-3 are the exact same set of letters.

MR. MITCHELL:  Your Honor, I did but I was provided them directly by Mr. Garcia so I didn't pull them from the ECF filing so I think I got two different batches.  I got the correct --

THE COURT:  You got -- since you were filing -- given to you directly.

MR. MITCHELL:  Correct, your Honor.

THE COURT:  All right, let me go on with the findings.  I want to ask the Clerk here if she could pull up Document 8-3 before I continue forward to see if those letters are there because, again, Mr. Garcia, I understand what you're advising me, that you did not have these letters, but I have across the top Document 8-3 sealed letters in support and recommendation and they start with a letter from the principal of OLS and it ends with the letter from a Mr. Rodolfo Montalvo.  There's 14 documents there.  And so I'm not sure where the glitch was.  I presume Government's not oppose to the proffer that those additional letters are basically what Mr. Garcia has outlined here this afternoon.

28

**MR. MITCHELL:** Not at all, your Honor, no opposition.

**THE CLERK:** Judge, they are the same.

**THE COURT:** They're the same, okay. So Clerk has advised me that it's on the system as the same set of letters so --

**MR. GARCIA:** Okay, Judge.

**THE COURT:** Mr. Villaurrutia, kind of went sideways on that. Just want to clarify what was on file here for consideration. Will take into consideration the letters that have been provided in addition to the proffer here by your counsel and basically set forth that you're a good father, you contribute to the church, you try to attend your children's events as well.

Pretrial Report has set forth a bond recommendation of $75,000 with a $2,000 cash deposit. Government is opposed to bond. Their arguments have been set forth here a little more clearly than they were the other day. Obviously counsel's requesting bond on your behalf at this time.

Due to the amount of narcotics involved in this case and in (indisc.) charged offenses, there is a rebuttable presumption of detention pursuant to Title 18, United States Code 3142(e)(3)(A). I noted the other day you are a naturalized United States citizen. You have lived the majority of your life here in Hidalgo County. And you have no prior arrests or convictions. Therefore, as noted on the record, the

29

presumption has been sufficiently rebutted.  However, even if rebutted, the fact that the offense charged carries a presumption of detention can be considered when determining whether bail or bond can be set.  As set forth per *United States v. Hare*, H-A-R-E, 873 Second Federal Supplemental 796, thus the mere production of evidence does not completely rebut the presumption and in making its ultimate determination the Court may still consider the findings by Congress that drug offenders pose a special risk of flight and dangerousness to society.  Thus, even though the presumption has been made -- met -- can you still hear, Mr. Villaurrutia?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  Okay.  Thus the presumption has been met in this case, I can take into consideration that you are charged with offense of providing planes where in excess of 2,000 kilograms of cocaine was transported with the intent to smuggle that cocaine here in the United States, and that your role was to facilitate obtaining those planes as well as it appears maybe even laundering the drug proceeds involved with the distribution of that cocaine.  And I will do so at this time.  This is a very serious offense.  It appears your involvement ran from 2017 through 2019, and at least you're -- based on the Government's testimony, you were connected to eight events.

I will note that in January of 2020, Federal agents

30

did obtain the cooperation of your -- you were signed up as a cooperator by the agent out of Miami, Florida.  It appears you were aware of the allegations against you.  No evidence was presented that you were deemed a flight risk during the time you cooperated with law enforcement in January of this year through the time of your arrest.  I will note Agent Villarreal's testimony was limited; would have been information provided to him from DEA.  Seems like they're the ones working with you.  And for whatever reason, if there was any evidence on that regard, that evidence was not presented to HSI for today's hearing.

With that said, sir, these are very serious charges. You are looking at significant amount of time considering the quantity of the narcotics involved, considering your alleged role in the offense.  I do note there has been additional information provided that it appears at times you claimed to have properties in Mexico in connection with the acquisition of the airplanes based on looking at documents presented here in the proffer.  I do note your counsel, they didn't object to the proffer but note they didn't have any additional information to say one way or the other if that is the case in regards to the property.  There's also concern that at least a codefendant probably resides in Mexico as well as your father resides in Mexico.  Taking that into consideration, but taking into consideration that you are a naturalized United States Citizen,

**EXCEPTIONAL REPORTING SERVICES, INC**

31

you do have a family here in --

MR. GARCIA:  Your Honor.

THE COURT:  Yes, sir.

MR. GARCIA:  Excuse me for interrupting, Judge.  That is -- I've been trying to get the Court's attention by waving.  But my client's father in Mexico is homeless.  You know, his family have to send him, you know, PayPal so he can get something to eat.  You know, he's not living high on the hog over there.  He's not living in some palace.  It's not like he can go and live in some home or that that person can facilitate his exit from the United States.  So I'd respectfully ask the Court to consider that.  I know it's twice already that the Court mentions that his father lives in Mexico.  He is homeless in Mexico and so I'd ask the Court to consider that when fashioning its ruling.  Thank you.

THE COURT:  Mr. Mitchell, any objection to that proffer about the status of the father?

MR. MITCHELL:  I don't object to the proffer, your Honor, but I have no additional information as to the father.

THE COURT:  Mr. Garcia, I understand your information about -- let's just assume the case that he is homeless, so at the end of the day he does have at least two family members who reside in Mexico.  That would be a concern for the Court.  Looking at the charges and the (indisc.) situations where individuals may look to flee to Mexico and they have no family

or no connections to Mexico, and that is not necessarily the case.  Your client spent his first years there.  He does have a Mexican passport as well.  And as set forth by the Government, he has done several transactions in Mexico over the years in connection with the sale and acquisition of airlines.  And he has traveled it appears somewhat in connection with the allegations.

With that said, though, I'm going to take into consideration that your client is a naturalized United States citizen, he does have family here in the United States, he has spent the majority of life here in the United States, he has no prior criminal record.  Also appears he does have stable employment in connection to the aviation field.  And also going to take into consideration that he's been aware of these charges since January of 2020 and no information has been presented to the Court of him trying to flee or avoid any contact with law enforcement while signed up as a cooperator or afterwards.

So for those reasons, I make a formal finding that I do believe a condition or a combination of conditions can be set to assure your client's appearance, as well as safety to the community.  The conditions will be as follows:  bond is actually going to be set at a hundred thousand dollars with a requirement of a deposit of $10,000.  Your residence need to be inspected by the U. S. Probation Department and make

33

determination that the residence is suitable for an individual on pretrial release. Third party custodian is required and needs to be approved by the Court. You must not violate any Federal, State, or local law while on bond. Pretrial supervision out of McAllen, Texas. Seek, maintain employment or otherwise submit proof of disability. Do not obtain passport or travel papers. Passports for both the United States and Mexico have to be turned in to the United States Probation Department here in McAllen Division before you're released out on bond. Your travel will be restricted to the Southern District of Texas, McAllen Division, that's Starr and Hidalgo Counties, with permission to travel to the Eastern District of Texas, Sherman Division, for any and all court proceeds; no travel to Mexico. Avoid any and all contact with codefendants and potentially witnesses or victims in this case. In this day and age, that also means social media contact as well, not just telephone or in person contact. Refrain from possession firearms, dangerous -- or dangerous weapons. Refrain from any excessive use of alcohol. Refrain from use or unlawful possession of narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner. Submit to any alcohol or drug testing as directed by the U. S. Probation Office. Participate in a program of inpatient or outpatient substance abuse therapy and counseling as directed by the U. S. Probation Department. You are going to require to

**EXCEPTIONAL REPORTING SERVICES, INC**

34

participate in a GPS electronic monitoring as directed and pay costs associated with such monitoring based on the ability to pay as determined by the U. S. Probation Department.  I'm also going to include the following:  the monitoring can be modified at the discretion of the U. S. Probation Department should you test positive for COVID-19.  In other words, U. S. Probation Department has other forms of electronic monitoring that can be done where there's not a need for in-person contact should you -- any individual test positive for COVID-19.  So the requirement is GPS monitoring but it can be modified should you test positive for COVID-19 and modification is needed for that reason.  As part of electronic monitoring, you're going to be ordered to comply with home detention that is as follows:  you are restricted to your residence at all times except for employment, education, religious service, medical and substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities preapproved by the U. S. Probation Office, McAllen Division. You need to report any and all contact with law enforcement within 24 hours of said contact.

Just to be clear, in making this determination, I did take into consideration the arguments presented both by your counsel as well as Government, did take into consideration you do not have a prior criminal record that I'm aware of, your family does reside here in McAllen, you spent the majority of

your life here in the United States as well.  Also took into consideration that you have been aware of these allegations or some form of these allegations since January of 2020, and no information has been presented to the Court that you attempted to flee or avoid any apprehension.  And it appears the agents were able to arrest you here in McAllen in connection with the indictment out of the Sherman Division in the Eastern Division of Texas.  That was taken into consideration as well.

It will take a few days for these conditions to be met.  Let me advise the following -- well, before I get to the next point on the admonishments, Mr. Mitchell, anything from the Government at this time?

MR. MITCHELL:  Yes, your Honor.  The Government would be requesting a stay.  I believe an appeal will be filed shortly if not by the end of today.

THE COURT:  In regards to that, I want to ask the Government to actually place something on file --

MR. MITCHELL:  Yes, your Honor.

THE COURT:  -- in regards to this stay.  I will note more likely than not that stay will be approved.  You do have a right to appeal this to the District Court in the Sherman Division within the Southern District of Texas.

MR. MITCHELL:  Thank you, your Honor.

THE COURT:  But before formally ruling on that, if you just have something on file, if not by the end of the day,

by Monday.

MR. MITCHELL:  Absolutely, your Honor.

THE COURT:  So, Mr. Villaurrutia, with that, so under the Federal Rules of Criminal Procedure, at this stage you're before a magistrate judge here in the McAllen Division, Southern District of Texas.  I am going to issue out a written order in regards to today's hearing that bond be set.  However, the Government does have a right to request a stay and appeal this matter to the district judge.  Do you know the district judge out of Sherman?

MR. MITCHELL:  I don't, your Honor, I'm sorry.

THE COURT:  And, Mr. Villaurrutia, they do have a right to appeal this to the district judge, whether it's here in McAllen Division, but your case is out of Eastern District of Texas, Sherman Division, appeal this determination of bond. They're -- likely later today they'll file a motion for stay. Unless there's something I'm unaware of, more likely than not that stay will be granted.  In other words, you'll not be released on bond, this matter will be appealed to the district judge in the Sherman Division as these proceedings go forward.

Mr. Garcia, anything you want to address at this time?

MR. GARCIA:  Not at this time, Judge.  I appreciate the Court's opportunity to come before your Honor and argue for his bond.  Thank you, Judge.

37

**THE COURT:**  So, Mr. Rutia (sic) --

**MR. GARCIA:**  (Indisc.)

**THE COURT:**  I'm sorry, Mr. Garcia, anything else?  I didn't mean to cut you off?

**MR. GARCIA:**  No, Judge, I'm good.

**THE COURT:**  And, Mr. Mitchell, anything else?

**MR. MITCHELL:**  No, your Honor.  Thank you.

**THE COURT:**  So procedurally, once that stay is in place and once this bond determination is placed essentially on hold, I'll go ahead and issue an order to have you transferred to the Sherman Division to the Eastern District of Texas for all further proceedings.  I'll check with the Marshals.  My educated guess, that may take anywhere from two to four weeks to get you up there.  If for whatever reason it's longer, your attorney can file a motion for reconsideration of everything if you're down here in the McAllen Division longer than is needed.  But the Marshals will be ordered to transfer you as soon as possible to the Sherman Division for all other further proceedings, sir.  Therefore, at this time, even though bond has been set in this matter, in anticipation that the Government will file a motion for stay, that will be granted by the Court.  You're going to be remanded to the custody of the Marshals pending the outcome of these proceedings further in the Sherman Division.  If there's nothing -- oh, Mr. Garcia?

**MR. GARCIA:**  Yes, Judge.  Should we comply with the

38

Court's order about the passports or what do we do, what do I do with those?

MS. SPEAKER:  Your Honor, if I may?

THE COURT:  Yes.

MS. SPEAKER:  Until the conditions of bond be met and we actually have the location monitoring in place, then that will be surrendered at that time and not before.  Thank you.

THE COURT:  Mr. Garcia, were you able to hear that?

MR. GARCIA:  I was, Judge, thank you.

THE COURT:  So I guess the short answer is hold onto everything right now since we're kind of on status quo until the final determination out of Sherman.

MR. GARCIA:  Thank you, Judge.  Have a good weekend.

THE COURT:  You, too.  Mr. Mitchell, you're excused at this time.  Again, Mr. Villaurrutia, you're remanded to the custody of the Marshals.  Good luck, sir.

**(This proceeding was adjourned at 3:54 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          **September 7, 2020**

**Signed**                                              **Dated**



*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**